# In the United States Court of Federal Claims

No. 18-1750V
Filed under seal: April 13, 2023
Reissued: April 28, 2023[*]
FOR PUBLICATION

---

**MICHAEL CIVATTE,**

　　　　　　*Petitioner,*

**v.**

**SECRETARY OF HEALTH AND
HUMAN SERVICES,**

　　　　　　*Respondent.*

---

*Leah V. Durant*, Law Offices of Leah V. Durant, PLLC, Washington, D.C., for the petitioner, with *Glen McCloud*, of counsel.

*Debra A. Filteau Begley*, Vaccine/Torts Branch, Civil Division, U.S. Department of Justice, Washington, D.C., for the respondent.

## MEMORANDUM OPINION AND ORDER

***HERTLING*, Judge**

　　　The petitioner, Michael Civatte, filed this claim under the National Vaccine Injury Compensation Program ("Vaccine Program") against the respondent, the Secretary of Health and Human Services, for injuries allegedly arising from a vaccine. The respondent conceded liability, and the special master awarded damages. The special master granted the petitioner only $75.00 of the $94,470.57 the petitioner sought to recover for "actual unreimbursable expenses" related to his vaccine-caused injury. The petitioner has filed a motion to review the special master's decision on his medical expenses.

　　　The special master denied the claim for $94,395.57 of the petitioner's medical expenses largely because he determined they had not been "incurred," as required by the Vaccine Act. To reach this result, the special master concluded that medical expenses ceased to be "incurred"

---

[*] Pursuant to Vaccine Rule 18(b), the Court initially filed this opinion under seal and afforded the parties 14 days thereafter to notify the court of any information that should be redacted from the opinion for reasons of privilege or confidentiality. The parties did not propose any redactions. Accordingly, this opinion is reissued in its original form for public availability.

once the petitioner was no longer legally liable for them, and the petitioner was no longer liable after the three-year state statute of limitations to collect on these expenses ran.

The petitioner argues that the special master made three legal errors by: (1) incorrectly interpreting the word "incurred;" (2) improperly relying on the applicable North Carolina statute of limitations to determine whether the expenses were incurred; and (3) incorrectly concluding that the petitioner was not liable for his unpaid medical expenses under North Carolina law.

The special master's conclusion that the petitioner's medical expenses were not "incurred" due to the expiration of a state statute of limitation was contrary to the Vaccine Act and precedents from the Federal Circuit. Accordingly, the special master's conclusion was not in accordance with law. The petitioner's motion for review is granted, the special master's decision regarding the petitioner's medical expenses is vacated, and the case is remanded for further proceedings.

## I.    BACKGROUND[1]

### A.    Vaccination and Injury

The petitioner, a resident of North Carolina, received the influenza vaccine on November 11, 2015. (ECF 78 at 1, 17.) Five days later, the petitioner visited his chiropractor complaining of low back and left knee pain. (*Id.* at 4.) On November 17, 2015, the petitioner went to the emergency room at New Hanover Regional Medical Center ("NHRMC") in Wilmington, North Carolina, due to a "three-day history of ascending numbness and weakness in all four extremities, headache, and chronic back pain," which left him unable to walk without assistance. (*Id.*) The petitioner "was admitted with a differential diagnosis including [Guillain-Barré syndrome ('GBS')]," which was confirmed by testing and evaluations performed over the next several days. (*Id.* at 4-5.) A few days later, the petitioner's symptoms worsened with facial weakness, mouth numbness, difficulty eating, and slurred speech. (*Id.* at 5.) He was admitted to the intensive care unit for 36 hours. (*Id.*)

On November 24, 2015, the petitioner was discharged from NHRMC and admitted to the NHRMC Rehabilitation Hospital ("NHRMC Rehab") for physical, occupational, and speech therapies and massage treatments. (*Id.*) While there, his strength improved but did not fully recover, and he needed "modifications or bathing, transfers, and ambulation." (*Id.*) The petitioner also "continued to have right-sided facial weakness," along with other issues. (*Id.*) The petitioner was discharged to his home on December 18, 2015. (*Id.* at 5-6.)

---

[1] The petitioner has not disputed any of the factual findings from the special master's decision, instead presenting purely legal questions involving interpretation of the Vaccine Act and North Carolina law. (ECF 82; ECF 83). The Court therefore relies on the special master's decision to provide a limited summary of the relevant background for context only. The provided background is condensed because the respondent conceded liability (ECF 24; ECF 25), and the award for pain and suffering is not at issue in this appeal (ECF 82).

During 2016, the petitioner continued to receive treatment, including physical and speech therapy, at NHRMC Rehab. (*Id.* at 6-7.) By early 2017, the petitioner's symptoms had improved such that he could perform eight hours of physical labor a day, although this level was still less than the 11 or 12 hours he could perform prior to the onset of his symptoms. (*Id.* at 7.) By the end of 2017, the petitioner suffered from left knee pain and swelling, which required surgical treatment in March 2018 and the use of crutches for approximately two months. (*Id.*) The petitioner was able to return to work within six months of his knee surgery, although he continued to experience left knee pain and developed right knee pain. (*Id.*)

In 2018, 2019, and 2021, the petitioner continued to suffer from "some" facial drooping and "minimal" to "mild" right-side weakness. (*Id.* at 8.) The petitioner has averred in affidavits that facial paralysis continues to "affect[ ] his work . . . his vision, eating, and drinking . . . and hurts his self-esteem." (*Id.* at 9 (citing Ex. 9 at ¶¶ 2, 4, 6, 7; Ex. 21 at ¶ 4).)

The petitioner did not have health insurance until January 2018. (*Id.* at 13 n.16.) As a result, the petitioner has claimed $94,470.57 in expenses for fees he paid or amounts he claims to owe for services he received to treat his symptoms while uninsured. (Ex. 18 at 1-2; Ex. 20 at 1-2.) Because of the unpaid medical bills, the petitioner has asserted that "[a]s of September 2021, he is still 'constantly bombarded' with letters and calls from debt collectors" and that this medical "debt has 'completely destroy[ed]' his credit score." (ECF 78 at 9 (quoting Ex. 21 at ¶ 5).)

## B.   Petition for Compensation

On November 13, 2018, the petitioner filed his petition under the Vaccine Program seeking compensation for GBS allegedly caused by the influenza vaccine administered on November 11, 2015. (ECF 1.)

On November 29, 2019, the respondent conceded that the petitioner was entitled to compensation for a flu/GBS table injury. (ECF 24-25.) The parties, however, were unable to agree on damages, and the special master set a briefing schedule to resolve that issue. (ECF 47.)

On June 21, 2021, the petitioner filed his brief on damages, seeking compensation for actual and future pain and suffering in addition to his medical expenses. (ECF 48.) On August 20, 2021, the respondent filed his response brief, disputing the extent of the petitioner's pain and suffering. (ECF 51 at 8-13.) The respondent also argued that the petitioner was not entitled to most of his claimed expenses. Because the petitioner had not paid almost any of his claimed expenses and because the statute of limitations to file suit for them had expired under North Carolina law, the respondent argued that these expenses had not been "incurred" under the Vaccine Act and therefore were not compensable. (*Id.* at 13-15.)

On September 20, 2021, the petitioner filed his reply brief disputing the respondent's arguments. (ECF 54.) The petitioner argued that the Vaccine Act does not incorporate state-law standards, and that the issue of whether a debt was time-barred under North Carolina law was not relevant to the petitioner's claims. (*Id.* at 9-16 (citing *Van Epps v. Sec'y of Dep't of Health & Hum. Servs.*, 26 Cl. Ct. 650, 653 (1992)).) The petitioner noted that a statute of limitations only

provided a legal defense to a lawsuit, but because the petitioner's debts were not otherwise "offset, forgiven or discharged," they still existed and were "causing a financial burden on petitioner that is both real and substantial." (*Id.* at 10-11 (citing the petitioner's supplemental affidavit, Ex. 21).)

The petitioner also argued that because he had been legally liable for the medical expenses when he agreed to pay them, he had "incurred" the expenses at that time under the plain language of the Vaccine Act, and that North Carolina law, if relevant, could not cause the debts to become "un-incurred." (*Id*. at 12-13.) Further, the petitioner argued that it was still possible for a lawsuit to be filed against him even if the statute of limitations had expired, exposing him to potential legal liability and requiring a response to avoid a default judgment. (*Id.* at 13-14.) The petitioner also argued that, even if the statute of limitations had run, the statute of limitations could be reset or waived in several ways. (*Id.* at 15-16.) The petitioner argued, for example, that his pursuit of compensation for his injury and associated medical expenses may have revived his liability for the medical debts by the petitioner's acknowledging their existence. (*Id.*)

The petitioner was ordered to obtain additional documentation regarding the expenses from NHRMC and updated statements from all creditors. (*See* ECF 55.) After NHRMC failed to respond to repeated inquiries from both parties, the special master first authorized the petitioner to issue two subpoenas and then authorized the respondent to issue a third, all of which went unanswered. (ECF 61; ECF 62; ECF 74.) Thereafter, the petitioner's attorney "personally reported, under penalty of perjury, NHRMC's verbal confirmation that the balances reflected in Ex. 25 were correct and final." (ECF 78 at 14 (citing ECF 68; ECF 69).)

In August 2022, the special master ordered the parties jointly to "confirm whether the record can be closed and deemed ripe for adjudication." (ECF 72 at 3). In October 2022, the parties "agree[d] that the record should be closed and that the matter is now ripe for adjudication." (ECF 77 at 3.) The parties also noted that they had "extensively briefed the issues regarding the past unreimbursable expenses," and that the "[r]espondent stands on the objections detailed in his briefing." (*Id.*) Notably, the petitioner requested that any award for the expenses owed to NHRMC "should be paid directly to NHRMC." (*Id.* at 2.)

On January 5, 2023, the special master issued his decision awarding damages. (ECF 78.) The decision awarded the petitioner $185,000.00 in damages for pain and suffering and $75.00 for medical expenses paid by the petitioner. (*Id.* at 2.) The special master noted that the "[p]etitioner avers that his outstanding medical debt of over $90,000.00, stemming from his uninsured treatment for GBS in 2015 - 2016, is 'insurmountable.'" (*Id.* at 9 (quoting Ex. 21 at ¶ 5).) The special master also recognized the effect the debt had on the petitioner's credit score, his difficulty obtaining loans, and the fact that he was "still 'constantly bombarded' with letters and calls from debt collectors." (*Id.* (quoting Ex. 21 at ¶ 5).)

The special master considered the debts the petitioner claimed he owed to each medical facility. The petitioner had sought reimbursement for a total of $94,470.57 in fees, including: (1) $3,437.06 from NHRMC for out-patient care; (2) $454.00 from NHN Neurology and Rheumatology; (3) $85,292.01 from NHRMC for in-patient care; (4) $1,590.00 from Delaney

Radiology; (5) $3,373.00 from Coastal Rehabilitation; and (6) $324.50 from Solstas Lab Partners.  (*See* Ex. 18 at 1-2; Ex. 20 at 1-2.)

The special master first rejected $3,287.06 in claimed expenses owed to NHRMC.[2]  (ECF 78 at 16.)[3]  The special master held that the petitioner had not provided an adequate explanation why NHRMC had previously written off those expenses with "charity care" discounts (*id.* (citing Ex. A; Ex. B at 1-3, 5)), but later showed that those amounts were still outstanding.  (*Id.* (citing Ex. 20 at 5-8; Ex. 25 at 36-39).)  The special master therefore rejected these claimed expenses because "the available evidence preponderantly establishes they were voluntarily borne by NHRMC."  (*Id.*)[4]

The special master rejected the petitioner's claim for "approximately $1,500.00" in medical expenses owed to an "NHRMC-affiliated physicians group," NHN Neurology and Rheumatology.  (*Id.*)[5]  According to the special master, because the petitioner had failed to

---

[2] In a footnote in his memorandum of objections, the petitioner challenges the decision to deny reimbursement for his expenses for NHRMC out-patient care.  (ECF 83 at 21-22 n.6.)  The petitioner waived this challenge, however, by failing to include it in his list of objections and by not adequately raising it in his filings.  *See* Rules of the Court of Federal Claims App. B, Rule 24(a)-(b)(1); *Germaine v. Sec'y of Health & Hum. Servs.*, 155 Fed. Cl. 226, 228 n.3 (2021) (noting that objections not in compliance with the Vaccine Rules are "forfeited").  Waiver of this challenge is also supported by the fact that this challenge would raise a question of fact and thereby contradict the petitioner's claim that "[b]ecause the instant case involves questions of law, this case is reviewed by the Court of Federal Claims *de novo*."  (ECF 83 at 13.)

[3] There is a $150.00 discrepancy between the petitioner's claimed expenses ($3,437.06) and the special master's rejection of those expenses ($3,287.06).  This discrepancy is due in part to the special master awarding $75.00 in fees actually paid by the petitioner.  The remaining $75.00 discrepancy appears to be due to the petitioner double counting the $75.00 in paid fees as both separate line items for "Patient Payment" in $5.00 to $15.00 increments and as part of line items, labeled "Outstanding Balance," which incorrectly reflect the total charges listed in the petitioner's bills rather than the outstanding balances owed.  (*Compare* Ex. 18 at 1-2, 5-8; Ex. 20 at 1-2, 5-8; *with* Ex. A; Ex. B at 1-3, 5.)

[4] The special master also noted that the documents submitted by the petitioner reflected that NHRMC had "applied its charity care policy to 'write off' outstanding balances of $5,821.65 and $117.94," which were not reimbursable because they did not appear on any other billing statement and because the petitioner had not claimed them.  (ECF 78 at 16 (citing Ex. B at 4, 6).)

[5] Notwithstanding the special master's statement that the petitioner was seeking "approximately $1,500.00" for expenses owed to NHN, records submitted by the petitioner (Ex. 18 at 1, 10-11; Ex. 20 at 1, 10-11) indicate that the petitioner is seeking only $454.00 in reimbursement for expenses owed to NHN; that smaller amount also reflects the respondent's understanding.  (ECF 85 at 11 n.6.)

produce an updated statement and because these expenses were not reflected elsewhere, they "may have been written off, discounted, or no longer pursued - but cannot be reimbursed herein." (*Id.*)

The special master found that the petitioner had "provided sufficient documentation that NHRMC and its agent Paragon [Revenue Group] have asserted" $85,292.01 in claimed expenses. (*Id.* at 17.) Nevertheless, the special master largely denied the petitioner's request for an award to cover these medical expenses because they had not been "incurred," as required by section 300aa-15(a)(1)(B) of the Vaccine Act. The special master explained:

> While "incurred" is not defined in the Vaccine Act, it is properly construed based on its ordinary meaning: "to 'incur' expenses means to pay or become liable for them." *Black v. Sec'y of Health & Hum. Servs.*, 93 F.3d 781, 785 (Fed. Cir. 1996). "In one common usage, a person becomes liable for yet-to-arise expenses at the time of undertaking an obligation to pay those expenses if and when they arise." *McCulloch v. Sec'y of Health & Hum. Servs.*, 923 F.3d 9[9]8, 1003 (Fed. Cir. 2019) (citing *Black's Law Dictionary* (10th ed. 2014) (defining liability as the state "of being legally obligated or accountable").

(*Id.* at 13.)[6]

Based on his conclusion that these medical expenses had not been "incurred," the special master denied reimbursement for $85,292.01 of the petitioner's claimed debts to NHRMC because the North Carolina statute of limitations to collect these outstanding debts had expired, meaning the petitioner was no longer liable for them. (*Id.* at 17-19.) In doing so, the special master relied on his own research into North Carolina caselaw, as "[n]either party cited caselaw interpreting the" statute of limitations cited by the respondent, N.C. Gen. Stat. § 1.52(1). (*Id.* at 18 (citing *Johnson Neurological Clinic v. Kirkman*, 121 N.C. App. 326 (1996)).)

Regarding the NHRMC bills, the special master found there was no contract that specified a payment date. (ECF 78 at 18.) The special master concluded that North Carolina's three-year statute of limitations began to run as of the date of the last service rendered, February 16, 2016, and the statute of limitations expired in February 2019. (*Id.* at 19.) There was no evidence that NHRMC or any other creditor had filed a legal action to collect on the petitioner's outstanding debt by that date. (*Id.* at 19.) The special master did, however, allow for $75.00 in reimbursement for sums the petitioner had personally paid to NHRMC for out-patient treatment, as previously noted. (*Id.* at 21 n.28.)

---

[6] The special master did note at the end of the quoted passage that "[t]he expenses must also be unreimbursable" but did not clarify that reference or further rely on it.

Finally, the special master rejected the claims for debts to Coastal Rehabilitation, Delaney Radiologists, and Solstas Lab Partners because the statute of limitations to collect on these debts had also expired.  (*Id.* at 19.)  Concerning the debt to Solstas Lab Partners, the special master also held that there was "insufficient evidence that Petitioner remains liable for them," because the entity that had acquired Solstas had not produced "updated billing records relating to Petitioner or other evidence that it is continuing to pursue these expenses."  (*Id.* (citing Ex. 24).)

The special master rejected the petitioner's argument that *Van Epps*, 26 Cl. Ct. 650, foreclosed the application of a state statute of limitations to a Vaccine Act claim.  (*Id.* at 19-21.)  The special master concluded that the opinion in *Van Epps* was "neither binding nor particularly persuasive in addressing Petitioner's burden to establish his liability for asserted damages, since the question of that liability implicates state law provisions for its collection."  (*Id.* at 19-20.)

The special master also rejected the petitioner's contention that the petitioner had revived the debt by seeking reimbursement for it because "the North Carolina Court of Appeals has held that such 'conditional' statements pertaining to use of a hoped-for legal award are insufficient to revive an otherwise-expired debt."  (*Id.* at 20 (citing *Johnson Neurological Clinic*, 121 N.C. App. at 331).)  Finally, the special master acknowledged that the debt was a burden to the petitioner and his credit report but held that that burden was not a basis for awarding costs, especially when the petitioner could seek to have his debts removed from his credit report under the Fair Credit Reporting Act.  (*Id.* at 20-21 (citing 15 U.S.C. § 1681c(a)(4)).)

On January 26, 2023, the petitioner filed a motion for reconsideration under Vaccine Rule 10(e).  (ECF 80.)  The petitioner argued that the special master's conclusion that the petitioner was not liable for his medical debt was incorrect under North Carolina law.  (*Id.*)  The petitioner claimed that the special master had not "invite[d] the parties to provide further briefing on the question of the interpretation of the State law."  (*Id.* at 2.)  The petitioner also filed an expert opinion letter from Eric M. Fabricius, Esq., a lawyer in North Carolina, who argued that nuances in North Carolina law prevented claims over the petitioner's medical debts from being extinguished.  (ECF 79-1.)

On February 2, 2023, the special master denied the motion for reconsideration.  (ECF 81.)  The special master held that it would not be in the interest of justice to grant the motion because the petitioner had not presented new evidence; rather the petitioner had "offer[ed] only disagreement with [his] legal reasoning."  (*Id.* at 3.)

According to the special master, the petitioner's arguments were "not even truly new," as the petitioner's reply brief had addressed the respondent's statute of limitations arguments.  (*Id.* at 3-4.)  The petitioner had had "ample opportunity to provide appropriate documentation, legal argument, and caselaw to support the damages component at issue." (*Id.* at 3.)  Prior to the issuance of the special master's decision, the petitioner had "confirmed that [he] would rest on [his] previous briefing and that the matter was ripe for adjudication as of October 2022."  (*Id.* (citing ECF 72; ECF 77).)  The special master therefore denied the petitioner's motion as a belated attempt to argue the effect of North Carolina law via an opinion letter that was "unhelpful, unpersuasive, and intrude[d] into the province of the Court."  (*Id.*)

### C.     Motion for Review[7]

On February 6, 2023, the petitioner sought review of the special master's decision awarding damages.  (ECF 82; *see also* ECF 83 (Memorandum of Objections).)  As confirmed during oral argument, the petitioner does not challenge any of the special master's factual findings, instead objecting only to the special master's interpretation of the Vaccine Act and his interpretation of and reliance on North Carolina law to deny the petitioner's claim for his medical expenses.

The petitioner's three specified objections to the special master's decision are:

> I. The [ ] special master erred by relying on state procedural law (statute of limitations) when he determined that petitioner was no longer liable or otherwise responsible for his vaccine-related medical expenses and therefore never incurred the expenses.

> II. Even if the [ ] special master is permitted to consider state law, he misapplied that law in this case, thereby putting petitioner's award for pain and suffering at great risk.

> III. The [ ] special master erred by not considering the evidence filed concurrently with petitioner's motion for reconsider[a]tion.

(ECF 82 at 1.)  On March 8, 2023, the respondent filed his opposition to the petitioner's motion.  (ECF 85.)  Oral argument was heard on April 5, 2023.

## II.     JURISDICTION AND STANDARD OF REVIEW

The Court of Federal Claims has jurisdiction to review the decisions of special masters under the Vaccine Program.  42 U.S.C. § 300aa-12(e); *see generally* Rules of the Court of Federal Claims ("RCFC") App. B, Title V (providing the rules governing the court's review of decisions of the special masters).  Pursuant to this jurisdiction, the court may "set aside any findings of fact or conclusion of law of the special master found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law and issue its own findings of fact and conclusions of law."  42 U.S.C. § 300aa-12(e)(2)(B); *see also* RCFC App. B, Rule 27.

The Federal Circuit has described the standard of review as "the most deferential possible."  *Munn v. Sec'y of Dep't of Health & Hum. Servs.*, 970 F.2d 863, 870 (Fed. Cir. 1992).  The specific degree of deference, however, depends on which aspect of a special master's judgment is under review.  *Id.* at 870 n.10.  This court "may set aside the decision of a special

---

[7] The petitioner's motion for review does not challenge any aspect of the special master's ruling other than his rejection of the petitioner's claim for compensation for medical expenses.  (*See* ECF 82; ECF 83.)  As such, this ruling does not disturb the special master's decision concerning compensation to the petitioner for pain and suffering, as that award has not been challenged in the motion for review.

master only if the special master's fact findings are arbitrary and capricious, its legal conclusions are not in accordance with law, or its discretionary rulings are an abuse of discretion." *Turner v. Sec'y of Health & Hum. Servs.*, 268 F.3d 1334, 1337 (Fed. Cir. 2001). The court reviews a special master's legal determinations *de novo*. *Capizzano v. Sec'y of Health & Hum. Servs.*, 440 F.3d 1317, 1323-24 (Fed. Cir. 2006); *Euken by Euken v. Sec'y of Dep't of Health & Hum. Servs.*, 34 F.3d 1045, 1047 (Fed. Cir. 1994).

## III.  DISCUSSION

This case involves a question of first impression: whether an "actual unreimbursable" medical expense is no longer "incurred" under 42 U.S.C. § 300aa-15(a)(1)(B), after the state statute of limitations to collect a debt owed for such a medical expense expires.

The special master held that the word "incurred" in the Vaccine Act required that "the expenses represent ongoing liabilities to Petitioner." (ECF 78 at 17.) In reaching this conclusion, the special master relied on two Federal Circuit cases, *Black v. Secretary of Health & Human Services*, 93 F.3d 781, 785 (Fed. Cir. 1996), and *McCulloch v. Secretary of Health & Human Services*, 923 F.3d 998, 1003 (Fed. Cir. 2019). (*Id.* at 13, 17.) Having found that North Carolina's "three-year period to pursue a claim for the medical expense liabilities terminated in February 2019 without action, as Respondent contends," the special master held that the petitioner was no longer liable for them. Accordingly, the special master held that the debts had not been "incurred" under the Vaccine Act, and therefore "those sums [were] not reimbursable . . . ." (*Id.* at 17-19.)

### A.  Parties' Arguments

The petitioner argues that there is no disagreement between the parties that the "petitioner was legally liable for the expenses at issue the moment they were incurred." (ECF 83 at 15.) The petitioner argues that an expense cannot become "un-incurred" because the word "incurred" only considers whether there was a legal obligation to pay the claimed expenses before the award is made. (*Id.* at 15-16 n.3.) The petitioner argues that he became liable for the expenses "'at the moment [he] bec[a]me[ ] legally liable'" for them. (*Id.* at 15 (quoting *Black v. Sec'y of Health & Hum. Servs.*, 33 Fed. Cl. 546, 550 (1995)).) The petitioner claims that the special master's analysis need go no further, and that his expenses should be reimbursed.

The respondent argues that the Federal Circuit's opinions in *Black* and *McCulloch* require an ongoing legal liability for an expense to be incurred. (ECF 85 at 10 (citing *Akerly v. New York Cent. R. Co.*, 168 F.2d 812, 814 (6th Cir. 1948); *Liability*, Black's Law Dictionary (11th Ed. 2014)).) The respondent also argues that the petitioner ignores the phrase "actual unreimbursable expenses" used in the Vaccine Act and notes that legislative history explains that the Vaccine Act is intended to "'pay only demonstrated, actual costs for which reimbursement cannot be obtained.'" (*Id.* at 11 (quoting H.R. Rep. 99-908, 20, 1986 U.S.C.C.A.N. 6344, 6361).)

B.      **Relevant Statute**

"Statutory interpretation . . . begins with the text." *Ross v. Blake*, 578 U.S. 632, 638 (2016).  Section 300aa-15(a)(1)(B) of the Vaccine Act, which the parties agree applies to the petitioner's claim for reimbursement of his medical expenses, provides:

> (B)  Subject to section 300aa-16(a)(2) of this title, actual unreimbursable expenses incurred before the date of the judgment awarding such expenses which--
>
>> (i) resulted from the vaccine-related injury for which the petitioner seeks compensation,
>>
>> (ii) were incurred by or on behalf of the person who suffered such injury, and
>>
>> (iii) were for diagnosis, medical or other remedial care, rehabilitation, developmental evaluation, special education, vocational training and placement, case management services, counseling, emotional or behavioral therapy, residential and custodial care and service expenses, special equipment, related travel expenses, and facilities determined to be reasonably necessary.

42 U.S.C. § 300aa-15(a)(1)(B).

C.      **Analysis**

Section 300aa-15(a)(1)(B) sets forth five basic elements for compensating a petitioner's expenses.  First, the statute defines what can be compensated, namely "actual unreimbursable expenses," although it does not define these terms.  Second, it establishes a time limitation, namely that these "actual unreimbursable expenses" must be "incurred before the date of the judgment awarding such expenses."  This limitation avoids duplicative compensation for actual unreimbursable expenses incurred after judgment provided under section 300aa-15(a)(1)(A).  Finally, section 300aa-15(a)(1)(B) sets forth three required conditions concerning the "actual unreimbursable expenses," namely that the expenses (1) resulted from the vaccine-related injury, (2) were incurred by or on behalf of the injured person, and (3) were only for the specific purposes set out in the statute.

Section 300aa-15(a)(1)(B) uses the word "incurred" twice and only in the simple past tense.  The simple past tense "refers to action completed at a definite time in the past."  Robert C. Farrell, *Why Grammar Matters: Conjugating Verbs in Modern Legal Opinions*, 40 Loy. U. Chi. L. J. 1, 19 (2008); *see also* Cambridge Dictionary, https://dictionary.cambridge.org/dictionary/english/past-simple (last visited April 11, 2023) (defining the simple past tense) ("the form of a verb used to describe an action that happened before the present time and is no longer happening.  It is usually made by adding -ed"); *The Chicago Manual of Style* § 5.130 (17th ed. 2017) ("The past indicative denotes an act, state, or condition that occurred or existed at some explicit or implicit point in the past.").

10

The text of the statute does not include any language that allows only for compensation of "actual unreimbursable expenses" incurred and still owed. Indeed, "incurred" in this subsection establishes only three requirements: that the expense was incurred before judgment; that the expense was for a person injured by a vaccine; and that that expense was attributable to the injury caused by the vaccine. Thus, the text of the statute itself indicates that the question of whether an expense is "incurred" creates binary yes/no requirements fixed to past events. Under this reading, the use of the simple past does not impose any continuous, ongoing requirement that the expenses that "were incurred" remain subject to collection by filing suit.

This interpretation of the statutory language is supported by the Federal Circuit's opinions in *Black* and *McCulloch*. In *Black*, the Federal Circuit was faced with a question of whether "incurred," as used in the Vaccine Act, referred to "anticipated payments or obligations for which liability has not already attached" under a now-repealed portion of the Vaccine Act, 42 U.S.C. § 300aa–11(c)(1)(D). *Black*, 93 F.3d at 785. The Federal Circuit defined "incur" as having its "ordinary" meaning, such that "to 'incur' expenses means to pay or become liable for them . . . . Thus, a person who is released from a hospital after treatment for a broken leg would normally be said to have 'incurred' the hospital expenses at that point . . . ." *Id.* at 785-86.

Although this definition was applied to a now-repealed portion of the Vaccine Act, both parties have relied on the *Black* case (albeit on different opinions from *Black*) to support their respective interpretations of the meaning of "incurred" as used in section 300aa-15(a)(1)(B), which was enacted at the same time as the now-repealed provision considered in *Black*. National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3743; (ECF 83 at 15 (citing *Black*, 33 Fed. Cl. at 550); ECF 85 at 13-14 (citing *Black*, 93 F.3d at 785-86).)

Unless the context demands otherwise, an identical term used within the same statute should be defined in the same manner. *See Atlantic Cleaners & Dyers, Inc. v. United States*, 286 U.S. 427, 433 (1932) ("[T]here is a natural presumption that identical words used in different parts of the same act are intended to have the same meaning."); *accord Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 319-20 (2014) (invoking the presumption of consistent usage but noting that it may yield to context). There is no apparent contextual reason why the meaning of "incurred" should be different across different sections of the Vaccine Act, and neither party has suggested any reason why the definition used by the Federal Circuit in *Black* is not applicable to section 300aa-15 of the Vaccine Act.

In *McCulloch*, the Federal Circuit interpreted the word "incurred" under the attorney fees and costs provision of the Vaccine Act, 42 U.S.C. § 300aa-15(e)(1). The Federal Circuit considered whether a petitioner had "incurred" fees that were legally required under state law to maintain guardianship of a minor to receive annuity payments from the Vaccine Program when those fees were due in the future following the entry of judgment. *McCulloch*, 923 F.3d at 1000, 1002-04.

The Federal Circuit held that the petitioner in *McCulloch* had already "incurred" such fees because payment of "legally required guardianship-maintenance expenses" was "a precondition for continuing receipt of the compensation granted in the judgment." *Id.* at 1003.

11

In so holding, the Federal Circuit relied on its definition of "incur" from *Black*. *Id.* at 1002-03. Writing for the panel, Judge Taranto noted:

> *Black* explains that "[i]n ordinary usage, . . . to 'incur' expenses means to pay or become liable for them." [*Black*, 93 F.3d] at 785. In one common usage, a person becomes liable for yet-to-arise expenses at the time of undertaking an obligation to pay those expenses if and when they arise. *See Liability*, Black's Law Dictionary (10th ed. 2014) (defining liability as the state "of being legally obligated or accountable," through civil or criminal penalties).

*Id.* at 1003.

The Federal Circuit's conclusion in *Black* that "to 'incur' expenses means to pay or become liable for them" supports the petitioner's contention that medical expenses are incurred the moment liability attaches. 93 F.3d at 785-86 ("[A] person who is released from a hospital after treatment for a broken leg would normally be said to have 'incurred' the hospital expenses at that point . . . .") The Federal Circuit in *McCulloch* did not change *Black*'s definition of "incur." 923 F.3d at 1002-03. While *McCulloch* further defined the word "liability" in reference to the word "incur," the Circuit's resolution involved the concept of "liability" for future expenses and did not rely on a definition of the phrase to "become liable" to imply a requirement to remain liable for past expenses. *Id.*

The respondent would build on the Federal Circuit's definition of "liability" and use the phrase "become liable" from *Black* to create an ongoing requirement of being in a "state 'of being legally obligated or accountable.'" (ECF 85 at 14-15 (citing *McCulloch*, 923 at 1003 (quoting *Liability*, Black's Law Dictionary (10th ed. 2014))).) The respondent parses *McCulloch* and *Black* too finely while ignoring the actual words of the Vaccine Act. "'[T]he language of an opinion is not always to be parsed as though we were dealing with [the] language of a statute.'" *Brown v. Davenport*, 142 S. Ct. 1510, 1528 (2022) (quoting *Reiter v. Sonotone Corp.*, 442 U.S. 330, 341 (1979)).

Defining "incurred" to refer to a simple binary requirement that can be satisfied at any point in the past is consistent with the "ordinary" meaning of the word "incurred." *See Black*, 93 F.3d at 785-86. For example, as the Federal Circuit noted in *Black*, if a person is released from hospital for a broken leg, the person has incurred the expenses for treatment of that broken leg, even if the expenses are unpaid. In other words, that person is liable for a medical debt. Unpaid expenses may be paid, they may be written off, or they may be forgotten entirely. Under no circumstances, however, would anyone ordinarily describe those expenses as having been "un-incurred" or find that those expenses were never incurred once they were paid or written off. *Cf. Zatuchni v. Sec'y of Health & Hum. Servs.*, 516 F.3d 1312, 1318 (Fed. Cir. 2008) ("Put simply, the fact that a vaccine-related death followed a vaccine-related injury in a particular case does not alter the fact that certain expenses were incurred . . . ."). In that sense, a legitimate unpaid expense arising from a vaccine injury is no different than any other debt; once incurred

because a person became liable for it at some point, it remains "incurred," even after it has been paid, written off, or forgiven.

The legal conclusion that a debt sustained due to an injury attributable to a vaccine was not "incurred" because it is no longer collectible through a lawsuit is inconsistent with the ordinary usage of "incurred."  The special master's opposite conclusion is legal error.

The special master's interpretation of the word "incurred" formed the basis of his conclusion denying the petitioner the bulk of his requested expenses.  As a result, the special master did not consider the other relevant statutory language requiring that the claimed expenses be "actual unreimbursable expenses."  He reached no legal conclusions, and made no factual findings, regarding the application and effect of these words from section 300aa-15(a)(1)(B) to the petitioner's request for expenses.  Instead, the special master relied almost entirely on his interpretation of the word "incurred" and the assumed relevance of North Carolina law to that interpretation to deny the petitioner's claims.[8]

Despite the petitioner's argument to the contrary, finding that the special master's understanding of the phrase "were incurred" is erroneous does not lead to the conclusion that the Vaccine Act requires payment of all medical debts "incurred" by the petitioner; section 300aa-15(a)(1)(B) requires compensation only for "actual unreimbursable expenses."  Because of the special master's interpretation of the word "incurred," he had no need to and did not consider whether the petitioner was due compensation for "actual unreimbursable expenses."  On a motion for review, a judge of this court generally does not determine a legal or factual question in the first instance.  *See Munn*, 970 F.2d at 870 ("With regard to both fact-findings and fact-based conclusions, the key decision maker in the first instance is the special master.")  Rather, it is best left to the special master to make appropriate findings of fact and reach conclusions of law that may be subject to further review, if necessary.  With the special master's legal conclusion as to the meaning of the term "were incurred" being vacated, remand is appropriate.

On remand, the special master should consider and address the issue of whether uncollectable, written-off, abandoned, or forgiven expenses, even if "incurred," may constitute as a matter of law "actual unreimbursable expenses" and, if he concludes they are not, should make appropriate factual findings with respect to the petitioner's claimed costs.  The special master may also find it necessary to make factual findings specific to whether each claimed debt has been written off or otherwise abandoned by the provider.

## IV.   CONCLUSION

The petitioner's motion for review is **GRANTED** and the special master's decision on damages as to the petitioner's claimed expenses is **VACATED**.

---

[8] The special master did make factual findings concerning the lack of evidence for portions of the petitioner's claimed expenses (*see* ECF 78 at 16-19), but these findings did not form the basis for his rejection of the bulk of the petitioner's requested reimbursement for expenses.

The case is **REMANDED** to the special master to consider in the first instance whether the definition of "actual unreimbursable expenses" under the Vaccine Act permits or forbids compensation for the petitioner's claimed expenses as a matter of law and fact.[9]

It is so **ORDERED**.

s/ Richard A. Hertling
**Richard A. Hertling**
**Judge**

---

[9] Because the special master's interpretation of the word "incurred" and his reliance on North Carolina law to support his denial of costs to the petitioner are being vacated, there is no need to address whether the special master's interpretation of North Carolina state law was correct. Because the special master may again consider whether expenses that are no longer collectable under the applicable state statute of limitations constitute "actual unreimbursable expenses" under the Vaccine Act, the petitioner should be permitted to present additional arguments on remand regarding the correct interpretation of North Carolina law.

14